THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
JAMES J. GALLAGHER, PLAINTIFF IN ERROR.

Submitted July 5, 1912—Decided November 21, 1912.

1. The offence charged by the allegation in an indictment that the
defendant committed an assault upon E. with intent to kill the
said E. may be sustained by proving that the assault was made
upon E. with the intent to kill G.

2. Facts pleaded in an indictment according to their legal effect
may be proved by evidence that determines their legal character.

3. The general principle of the criminal law that the intent with
which an act is done determines the legal character if its con-
sequences, although such consequences operate upon a different
person from that intended, applies to statutory as well as to com-
mon law crimes.

4. Upon the trial of the accused for committing an assault upon E.
with intent to kill E. proof that his intention was to kill G. is
relevant and not evidence of a distinct offence.

On error to the Oyer and Terminer of Hudson county.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON
and BERGEN.

For the plaintiff in error, *Alexander Simpson*.

For the defendant in error, *Pierre P. Garven*.

The opinion of the court was delivered by

GARRISON, J.   The plaintiff in error, who was indicted and
convicted in the Hudson Oyer of committing an assault upon
William H. Edwards with intent to kill the said Edwards,
has returned the entire record of the proceedings had upon
the trial with the writ of error bringing up the bill of ex-
ceptions as signed and sealed in the cause as authorized by
section 136 of the Criminal Procedure act.

The first point argued by counsel for the plaintiff in error
is, that unless the assault upon Edwards was made in the exe-
cution of a specific intent to kill Edwards the statutory crime

(*Pamph. L.* 1906, *p.* 430) was not committed. This is presented by error assigned upon exceptions to the charge and to the court's refusal to charge the defendant's requests.

The court charged that if the defendant shot, intending the consequences of his unlawful act, the jury might infer that he intended to kill whomever he struck. The jury was also in effect instructed that they might find the defendant guilty of an assault with intent to kill Edwards if the fact was that he intended to kill someone else. This was in response to a question put to the court by the jury.

The court refused to charge a request that "if the shot which wounded Mr. Edwards was intended for Mayor Gaynor, then the defendant would not be guilty under the first count of the indictment."

The real question in the case is presented by the denial of this request.

The facts to which the jury were to apply the law were that the defendant boarded a steamship lying at a pier in Hoboken, and after inquiring for Mayor Gaynor, approached him and placing a revolver within a few inches of his head discharged it with effect, a second shot taking effect upon Edwards who had precipitated himself between them to avert the defendant's attempt upon Mayor Gaynor's life. This wounding of Edwards having been charged in the indictment as an assault upon him with the intent to kill him, the question that has been argued is whether in proving the crime thus charged the state was restricted to proving the existence in the mind of the defendant of a specific intention to kill Edwards to the exclusion of proof of an intent to kill some other person, under the general doctrine of the criminal law that the intention with which an act is done establishes the legal character of its consequences. Concretely, the question is: Was the defendant guilty as charged if the shot that wounded Edwards was intended to kill Mayor Gaynor? The question is squarely raised by defendant's counsel and is as squarely decided in his favor by the cases he has cited from other jurisdictions which are collected in the *Century Digest,* volume 26, section 112, title "Homicide."

An examination of these decisions fails to satisfy us of the soundness of their reasoning, where reasoning is resorted to, which is not always the case. They fail to recognize the fundamental character of the general principle of the criminal law to which allusion has been made. That principle is that the intent with which a criminal act is done determines the legal character of its consequences. This doctrine, by its very terms, applies to cases where the consequences of the criminal act differ from those intended by the criminal, and it is common knowledge that this doctrine has its chief application in cases where such consequences have operated upon a different person from that intended. That this doctrine is derived from the common law does not detract from its fundamental character or restrict its operation to common law offences. The notion for which counsel contends and for which he cites the cases referred to, viz., that this doctrine does not apply to statutory additions to the criminal code seems to us to be based upon a distinction without a difference.

The other and sounder view is that illustrated by the case of *State* v. *Bectsa, 42 Vroom* 322, in which the doctrine in question was applied by our Court of Errors and Appeals to the statutory addition to the common law of murder by which murder in the first degree is described and in effect created. Bectsa had killed a girl whom he had no intention to shoot, but, as his act of shooting was done with the intention to commit murder by a willful, deliberated and premeditated killing. the judgment of murder in the first degree based on a verdict rendered under such a judicial instruction was sustained.

This case, which is authoritative upon the application of the general doctrine in question to statutory additions to the law of crimes, illustrates the only logical view.

It would be a strange perversion of reasoning, for instance, to hold in the present case that if Edwards had been killed the defendant would have been guilty of murder or of murder in the first degree as determined by his intent to kill Mayor Gaynor, but that such intent is not to determine his guilt of an assault with such intent. There is no reason for making

this arbitrary distinction; on the contrary, there is every reason why the paramount effect given to intention throughout the criminal law should be consistently adhered to. For it cannot have escaped attention that it is with respect to this essential element of guilt that punishment is meted out to the convicted criminal, even to the extent of depriving him of his life if his intention to kill was characterized by premeditation and deliberation.

As was said in State v. Bectsa: "The determining factor is the reprobated state of mind in the murderer and not the measure of success that attended its accomplishment," and in *State* v. *Brown,* 33 · *Vroom* 666, it was pointed out by Mr. Justice Depue that "the grade of the offence in our criminal code is determined by the character and degree of the punishment prescribed." Whether the imprisonment that is prescribed as the punishment for all serious crimes, including murder of the second degree, be regarded as punitive, reformatory or protective to society, equally and in either case the length of such imprisonment has reference to the state of mind evinced by the criminal. If, to take the present case as an illustration, society is entitled to be protected for twelve years by the imprisonment of one who has committed an assault with intent to kill, the reason such protection is needed is because such an intent existed and was put in execution, and upon this point neither the success of its execution nor the identity of its victim is of the essence of the crime.

Whether in drawing an indictment under the statute in question the pleader should set out the circumstances and charge their legal consequences or should state the facts according to their legal effect, as was done in this indictment, is a question of pleading with respect to which no issue has been raised and no harm has come to the plaintiff in error.

Even if the indictment was defectively drawn, although I am not suggesting that it was, the judgment could not be reversed unless the defendant had been thereby prejudiced in making his defence upon the merits. *Crim. Proc. act,* § 136.

In *State* v. *Jackson,* 20 *Vroom* 252, Mr. Justice Depue, speaking of assault with intent to *murder,* which was the

statutory description, says: "The offence was a misdemeanor at common law and retains that character in this state." I am unable to see how the substitution of "intent to kill" for "intent to murder" affects the character of the statute in this respect—it remains as declaratory of a common law offence, not as a statutory addition to the list of crimes. The significance of this characteristic of the statute is perfectly apparent.

There can be no reversal upon the ground we have been discussing. *State* v. *Connors,* 16 *Vroom* 211.

The next point is that it was error to admit in evidence a statement made by the defendant upon the ground that it was evidence of another and distinct offence. It was evidence of another offence, but not of a distinct one, for the two ran into each other so that the facts constituting the one were admissible to prove the other.

The statement concluded with a declaration that bore directly upon the offence for which the defendant was on trial, viz., "that shot was intended for Mayor Gaynor and Edwards must have got in the road." This made the whole statement relevant. *State* v. *Raymond,* 24 *Vroom* 260; *State* v. *Deliso,* 46 *Id.* 808.

The third and last point argued that it was improper for the state to prove the facts connected with the shooting of Mayor Gaynor is covered by what has just been said.

No error in the conduct of the trial appearing, the judgment of the Hudson Oyer is affirmed.